UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| LESLIE WHITE,<br><br>  Plaintiff,<br><br>  v.<br><br>ETHICON, INC.,<br><br>  Defendant. | CASE NO. C20-952 BHS<br><br>ORDER ON DEFENDANT'S MOTION TO LIMIT |

This matter comes before the Court on Defendant Ethicon, Inc.'s motion to limit the case-specific opinions of Bruce Rosenzweig, M.D. Dkt. 39. The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby rules as follows.

## I.  FACTUAL & PROCEDURAL BACKGROUND

On January 13, 2016, Plaintiff Leslie White filed suit against Ethicon in the MDL *In re Ethicon, Inc. Products Liability Litigation*, MDL No. 2327, located in the Southern District of West Virginia. Dkt. 1. White brings claims against Ethicon for, *inter alia*, product liability and fraud arising out of the surgical implantation of TVT Exact, a prolene mesh implant. *Id.*; Dkt. 71.

1   One of White's experts in this case is Bruce Rosenzweig, M.D. On December 17,
2   2018, Ethicon moved to limit the case-specific opinions of Dr. Rosenzweig. Dkts. 39, 40.
3   On December 21, 2018, White responded. Dkt. 41. Ethicon did not reply, and the
4   Southern District of West Virginia did not resolve the motion prior to transfer.

5   On June 22, 2020, the case was transferred to this Court from the Southern District
6   of West Virginia. Dkt. 56. Upon transfer, the parties filed a joint status report and
7   requested that the Court rule on Ethicon's pending motion to limit. Dkt. 66 at 9. It is now
8   before the Court whether to preclude Dr. Rosenzweig from: (1) testifying that White
9   would not have been injured if she had undergone a procedure that did not implant
10  synthetic mesh; (2) speculating about the state of mind of White's treating physicians;
11  (3) speculating that White's mesh underwent degradation and other alleged deformation;
12  (4) speculating about certain aspects of White's continuum of care; and (5) offering legal
13  conclusions.

## II. DISCUSSION

**A.   Standard**

Federal Rule of Evidence 702 governs the admissibility of expert testimony. Expert testimony is admissible if "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. The Supreme Court held that Rule 702 "assign[s] to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993). To perform this "gatekeeping role," the district court engages in a two-step

inquiry: first, the court must determine whether the proffered evidence is reliable, i.e., whether the expert's testimony reflects scientific knowledge, the findings are derived by the scientific method, and the work product amounts to "good science." *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1315 (9th Cir. 1995) (quoting *Daubert*, 509 U.S. at 590, 594). Second, the court must determine whether the testimony is relevant, i.e., "that it logically advances a material aspect of the proposing party's case." *Id*. The district court's gatekeeping obligation extends to all expert testimony, not only testimony based on scientific knowledge. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999). The proponent of expert testimony bears the burden of establishing admissibility by a preponderance of the evidence. *Daubert*, 509 U.S. at 592 n.10 (citing *Bourjaily v. United States*, 483 U.S. 171, 175–76 (1987)).

**B.     Merits**

Ethicon moves to limit Dr. Rosenzweig's case-specific opinions and requests that the Court preclude him from testifying as to a number of issues.[1] In her response, White only opposed Ethicon's request that Dr. Rosenzweig be precluded from offering opinions on what White's implanting physician knew before surgery and on whether White's mesh degraded, shrunk, contracted, or otherwise deformed. *See* Dkt. 41 at 1. If a party fails to

---

[1] Ethicon does not argue that Dr. Rosenzweig is unqualified as an expert to testify to such matters and rather seeks to limit his testimony under *Daubert* and its progeny. Indeed, the MDL court consistently found Dr. Rosenzweig qualified to offer his opinions on the issued raised here. *See, e.g.*, *In re Ethicon, Inc., Pelvic Repair Sys. Prods. Liab. Litig.*, 2:12–MD–02327, 2014 WL 186872, at *20 (S.D.W. Va. Jan. 15, 2014) ("I therefore find that Dr. Rosenzweig is qualified to offer the opinion that the TVT is not suitable for permanent implantation to treat stress urinary incontinence."). The Court will therefore only address the issues raised in the briefings.

ORDER - 3

oppose a motion, "such failure may be considered by the court as an admission that the motion has merit." Local Rules W.D. Wash. LCR 7(b)(2). Ethicon's motion is therefore granted as to the unopposed issues, and Dr. Rosenzweig is precluded from: testifying that White would not have been injured if she had undergone a procedure that did not implant synthetic mesh, speculating about the specified aspects of White's continuum of care, and offering legal conclusions.

Turning to the case-specific opinions in issue, Ethicon argues that Dr. Rosenzweig should not be allowed to testify as to White's implanting physician's state of mind because her implanting physician, Dr. Douglas Grier, was deposed and testified on his state of mind. *See* Dkt. 39-3, Deposition of Dr. Douglas Grier, at 88:23–89:23. White, in response, asserts that Dr. Rosenzweig's opinions on what Dr. Grier knew before surgery are part of Dr. Rosenzweig's general—not case-specific—opinions and that, therefore, this *Daubert* inquiry is better suited for a general causation motion. Dkt. 41 at 1.

The issue of whether Dr. Rosenzweig may be allowed to testify as to an implanting physician's knowledge prior to surgery has been addressed by the Southern District of West Virginia. In ruling on a similar motion arising out of the same MDL, the Southern District held "[t]o the extent that testimony seeks to attribute a state of mind to the implanting surgeon, I agree with Ethicon. Experts may not testify as to what other individuals did or did not know." *In re Ethicon, Inc.*, No. 2:12-cv-00423, 2017 WL 660017, at *3 (S.D.W. Va. Feb. 14. 2017). But the Southern District also held that "to the extent Ethicon seeks to exclude Dr. Rosenzweig's testimony about the adequacy of the warning and the knowledge of the medical community in general, I disagree. Expert

1 witnesses may properly offer opinions on these topics." *Id.* The Court agrees with the
2 carefully balanced ruling of the MDL court: Ethicon's motion is granted to the extent it
3 seeks to exclude Dr. Rosenzweig's testimony regarding Dr. Grier's state of mind, and any
4 remaining issues are reserved.

5 Finally, Ethicon argues that Dr. Rosenzweig should be precluded from offering his
6 opinion concerning any degradation or deformation of White's TVT Exact implant
7 because there is no reliable evidence that White's mesh sustained these conditions. Dkt.
8 40 at 6. Dr. Rosenzweig opines that White's injuries were directly caused by the TVT
9 Exact and that the TVT Exact has, in essence, degraded and deformed. Dkt. 39-1 at 11–
10 12. Ethicon argues that linking his opinions that it is possible that TVT Exact may
11 degrade to White's specific injuries would be irrelevant and prejudicial because Dr.
12 Rosenzweig has not conducted an independent medical evaluation of White. White
13 argues that, because this case is centered around the allegedly defective TVT Exact mesh
14 implant, there is no unfair prejudice in allowing Dr. Rosenzweig to testify on the issues
15 that make mesh defective. White may be correct that there would be no unfair prejudice
16 to Ethicon if Dr. Rosenzweig testifies as to whether TVT Exact can degrade, but such
17 testimony relates to general causation. *See Huskey v. Ethicon, Inc.*, 29 F. Supp. 3d 691,
18 706–08 (S.D.W. Va. 2014) (finding that Dr. Rosenzweig is qualified to offer general
19 causation opinions that mesh used in an Ethicon device degrades, frays, and loses
20 particles). Ethicon, rather, is moving to limit Dr. Rosenzweig's specific causation opinion
21 as to White and to preclude him from testifying that her injuries were caused by the TVT
22 Exact implant and its degradation.

Dr. Rosenzweig's testimony that White's injuries were caused by the degradation and deformation of the TVT Exact implant may be relevant to White's claims, but the Court must determine whether such testimony is reliable. The reliability of an expert's methodology is evaluated using a wide range of factors, such as: (1) whether the expert bases his opinion on appropriate facts or data; (2) the degree to which the expert's methodology is accepted within his profession; (3) whether the expert's methodology can be tested or verified; (4) whether standards exist which govern the expert's methodology and, if so, whether the expert adhered to those standards; (5) whether the expert considers or accounts for alternative or contradictory information; and (6) whether the expert exercises the same degree of care in applying the methodology that an expert in the field would exercise when conducting professional work outside the context of paid litigation. *See Daubert*, 509 U.S. at 593–94; Fed. R. Evid. 702 advisory committee's note to 2000 amendments.

Even though Dr. Rosenzweig has not personally examined White or her mesh implant, he offers his case-specific opinions based on his review of White's medical records, scientific literature, and the records and depositions related to this case. Dr. Rosenzweig has based his opinion on appropriate facts and considered White's pre-implant medical history in making his conclusions. *See* Dkt. 39-1 at 11. Dr. Rosenzweig's methodology thus meets the *Daubert* standards of reliability if he can establish that rendering an opinion based on medical records without an examination of the patient is accepted practice area in his field. *See Messina v. Ethicon, Inc.*, 2020 WL 7419586 (M.D. Fla. Dec. 17, 2020) (finding that Dr. Rosenzweig's testimony about

degradation of the plaintiff's mesh implant was reliable when Dr. Rosenzweig did not personally examine the plaintiff). To the extent that Ethicon disagrees with Dr. Rosenzweig's conclusions, it may challenge the evidence through cross examination or presentation of contrary evidence. *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010) ("Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." (internal citation omitted)). Ethicon's motion to exclude Dr. Rosenzweig's testimony as to degradation or other deformation is therefore denied.

### III.  ORDER

Therefore, it is hereby **ORDERED** that Defendant Ethicon, Inc.'s motion to limit the case-specific opinions of Bruce Rosenzweig, M.D., Dkt. 39, is **GRANTED in part**, **DENIED in part**, and **RESERVED in part**.

Dated this 14th day of January, 2021.

BENJAMIN H. SETTLE
United States District Judge