1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

LESLIE WHITE,

                 Plaintiff,

    v.

ETHICON, INC.,

                 Defendant.

CASE NO. C20-952 BHS

ORDER ON DEFENDANT'S
MOTIONS TO EXCLUDE OR
LIMIT

      This matter comes before the Court on Defendant Ethicon, Inc.'s motions to

exclude or limit Plaintiff Leslie White's experts. Dkts. 76, 78, 80, 82, 84. The Court has

considered the briefing filed in support of and in opposition to the motions and the

remainder of the file and hereby rules as follows.

## I.   FACTUAL & PROCEDURAL BACKGROUND

      White alleges that she suffered injuries because of her TVT-Exact implant—a

polypropylene mesh implant created by Ethicon—and brings claims under the

Washington Products Liability Act ("WPLA"), RCW Ch. 7.72.[1] *See generally* Dkts. 4,

_____

[1] Ethicon moved for summary judgment, Dkt. 99, and the Court granted the motion in
part and denied it in part, Dkts. 116, 119. White's remaining WPLA claims are Strict Liability –

1    116. This case originated in the MDL *In re Ethicon, Inc. Products Liability Litigation*,

2    MDL No. 2327, located in the Southern District of West Virginia, Dkt. 4, and was

3    transferred to this Court in June 2020, Dkt. 56.

4          White has designated several experts in support of her products liability claims

5    against Ethicon: Bruce Rosenzweig, M.D.; Paul J. Michaels, M.D.; Scott A. Guelcher,

6    Ph.D.; and Michael Thomas Margolis, M.D. Ethicon now moves to exclude certain

7    general opinions of Dr. Rosenzweig, Dkt. 76, to limit the opinions and testimony of Dr.

8    Michaels, Dkt. 78, to limit the opinions and testimony of Dr. Guelcher, Dkt. 80, and to

9    limit or exclude the testimony of Dr. Margolis, Dkt. 82.[2]

10                            **II.   DISCUSSION**

11         Federal Rule of Evidence 702 governs the admissibility of expert testimony.

12   Expert testimony is admissible if "the expert's scientific, technical, or other specialized

13   knowledge will help the trier of fact to understand the evidence or to determine a fact in

14   issue." Fed. R. Evid. 702(a). The Supreme Court held that Rule 702 "assign[s] to the trial

15   judge the task of ensuring that an expert's testimony both rests on a reliable foundation

16   and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579,

17   597 (1993). To perform this "gatekeeping role," the district court engages in a two-step

18   inquiry: first, the court must determine whether the proffered evidence is reliable, i.e.,

19

20   Failure to Warn, Strict Liability – Design Defect under the consumer expectations test, and
     General Strict Liability – Consumer Expectations. *See* Dkt. 116.

21         [2] Ethicon additionally moved to exclude the general opinions of Daniel Elliot, M.D., Dkt.
     84, but White withdrew her designation of Dr. Elliot as a general causation expert in response,

22   Dkt. 90. Ethicon's motion as to Dr. Elliot is therefore DENIED as moot.

whether the expert's testimony reflects scientific knowledge, the findings are derived by the scientific method, and the work product amounts to "good science." *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1315 (9th Cir. 1995) ("*Daubert II*") (quoting *Daubert*, 509 U.S. at 590, 593–94). Second, the court must determine whether the testimony is relevant, i.e., "that it logically advances a material aspect of the proposing party's case." *Id*. The district court's gatekeeping obligation extends to all expert testimony, not only testimony based on scientific knowledge. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999). The proponent of expert testimony bears the burden of establishing admissibility by a preponderance of the evidence. *Daubert*, 509 U.S. at 592 n.10 (citing *Bourjaily v. United States*, 483 U.S. 171, 175–76 (1987)).

**A.     Dr. Bruce Rosenzweig**

Dr. Rosenzweig is a pelvic surgeon and urogynecologist and has been designated by White to provide general opinions about Ethicon's TVT-Exact, which is used to treat stress urinary incontinence ("SUI"). *See generally* Dkt. 77, Ex. 1, Expert Report of Bruce Rosenzweig, M.D. Ethicon moves to exclude certain general opinions of Dr. Rosenzweig. Dkt. 76.

**1.     MDL Prior Rulings**

First, Ethicon moves to incorporate the MDL Court's prior rulings and asks the Court to preclude Dr. Rosenzweig from: (1) criticizing Ethicon's testing; (2) providing marketing opinions; (3) offering legal conclusions; (4) speculating about Ethicon's knowledge and corporate conduct; and (5) providing a narrative summary of corporate documents. Dkt. 76 at 2. In response, White asserts that she will not elicit legal

conclusions or state-of-mind opinions from Dr. Rosenzweig. Dkt. 91 at 3. She does not

respond to Ethicon's request that Dr. Rosenzweig be precluded from providing a

narrative summary of corporate documents, though she does argue that he be permitted to

offer his opinion of Ethicon internal documents. *Id.* Dr. Rosenzweig may testify about his

review of Ethicon documents for the purpose of explaining the basis of his opinion, so

long as a foundation is laid. *See Huskey v. Ethicon, Inc.*, 29 F. Supp. 3d 691, 702–03

(S.D. W. Va. 2014). But he may not provide a narrative summary of such documents.

Ethicon's motion is therefore granted as to these uncontested issues, and Dr. Rosenzweig

is precluded from offering legal conclusions, speculating about Ethicon's knowledge and

corporate conduct, and providing a narrative summary of corporate documents.

White argues that Dr. Rosenzweig should be permitted to criticize Ethicon's

testing and marketing practices. Dkt. 91 at 3–5. Ethicon clarifies in its reply that it seeks

to preclude Dr. Rosenzweig from critiquing "the manner by which Ethicon went about

marketing its products to certain patient populations." Dkt. 97 at 2. Indeed, the MDL

Court ruling that Ethicon seeks to incorporate specifically "excluded this testimony

because 'it is not helpful to the jury to have Dr. Rosenzweig read a document explaining

what the inventor of the [product] thought about this. The jury is capable of reading that

document itself.'" Dkt. 66-37 at 14 (quoting *Edwards v. Ethicon, Inc*., 2:12-cv-9972,

2014 WL 3361923, at *10 (S.D. W. Va. July 8, 2014)). Ethicon previously moved to

incorporate this ruling in this case before transfer, and White did not oppose the motion at

that time, although the MDL Court ultimately did not resolve Ethicon's motion. *See* Dkt.

97 at 3. White's response does not establish Dr. Rosenzweig's credentials in this specific

marketing area, and the Court agrees with the MDL Court's conclusion. Ethicon's motion is therefore granted, and Dr. Rosenzweig's expert testimony on this issue is excluded.

Similarly, the Court agrees with the MDL Court's conclusion that Dr. Rosenzweig is precluded from criticizing Ethicon for failing to conduct a certain level of testing or studies of the TVT-Exact. The MDL Court previously held that there is "no indication that Dr. Rosenzweig has any experience or knowledge on the appropriate testing a medical device manufacturer should undertake." Dkt. 66-37 at 11–12; *see also In re Ethicon Inc. Pelvic Repair Sys. Prod. Liab. Litig.*, MDL No. 2327, 2020 WL 1061091, at *5 (S.D. W. Va. Feb. 13, 2020). White's response does not alter that conclusion. That Dr. Rosenzweig was involved in the development of a catheter does not establish his experience with product testing and mesh products. *See Humleker v. Boston Sci. Corp.*, No. 6:19-cv-121-Orl-31EJK, 2020 WL 6870852, at *9 (M.D. Fla. Oct. 2, 2020). Ethicon's motion on this point is therefore granted, and Dr. Rosenzweig is precluded from criticizing Ethicon's testing. However, Dr. Rosenzweig is permitted to testify as to whether any testing occurred.

### 2.    Non-synthetic Mesh Procedures

Next, Ethicon moves to preclude Dr. Rosenzweig from testifying that non-synthetic mesh procedures are a safer alternative. Dkt. 76 at 4. As Ethicon highlights, this Court previously held that Dr. Rosenzweig is precluded from "testifying that White would not have been injured if she had undergone a procedure that did not implant synthetic mesh" because Ethicon's motion to limit Dr. Rosenzweig's case-specific opinions was unopposed as to this issue. Dkt. 72 at 3–4. The Court agrees with the MDL

1    Court that as a general matter, "alternative procedures/surgeries do not inform the issue

2    of whether an alternative design for a product exists." *In re Ethicon, Inc. Pelvic Repair*

3    *Sys. Prod. Liab. Litig*., No. MDL 2327, 2017 WL 1264620, at *3 (S.D. W. Va. Mar. 29,

4    2017); *see also Mullins v. Johnson & Johnson*, 236 F. Supp. 3d 940, 942 (S.D. W. Va.

5    2017) ("I am convinced that an alternative, feasible design must be examined in the

6    context of products—not surgeries or procedures.") (citing *Talley v. Danek Med., Inc*.,

7    179 F.3d 154, 162 (4th Cir. 1999)). Ethicon's motion is therefore granted, and Dr.

8    Rosenzweig is precluded from testifying that non-synthetic mesh procedures are a safer

9    alternative in support of White's design defect claim.

10           To the extent that White seeks to elicit this testimony from Dr. Rosenzweig on her

11   failure to warn claim or as impeachment evidence, she will need to lay a foundation. The

12   Court thus reserves ruling on this issue.

13           **3.    Cut of TVT-Exact**

14           Ethicon next argues that Dr. Rosenzweig should be precluded from criticizing the

15   cut of the TVT-Exact. Dkt. 76 at 4–5. Ethicon's TVT devices contain mesh that is cut

16   either mechanically or using a laser; the TVT-Exact contains mesh that is cut using a

17   laser. *Id.* at 4. Ethicon argues that Dr. Rosenzweig does not indicate that a TVT-Exact

18   with differently cut mesh would have been a safer design or that White would have

19   avoided any of her injuries if the mesh of her TVT-Exact was cut differently. *Id.* Ethicon

20   also takes issue with the fact that Dr. Rosenzweig has criticized both laser-cut and

21   mechanically-cut mesh. *Id.*

22

1    Any inconsistencies in Dr. Rosenzweig's opinions about whether laser-cut versus

2 mechanically-cut mesh are safer alternative designs are matters for cross examination, not

3 exclusion. *See Ellerbee v. Ethicon, Inc.*, No. 8:20-CV-1514-TPB-AEP, 2021 WL

4 2010640, at *3 (M.D. Fla. May 20, 2021); *Laderbush v. Ethicon, Inc*., No. 20-CV-62-JD,

5 2020 WL 3001958, at *2 (D.N.H. June 4, 2020). Moreover, White's design defect claim

6 under the risk-utility test, which requires a plaintiff to prove the existence of an

7 alternative design that was practical and feasible and that would have prevented

8 plaintiff's harm, has been dismissed with prejudice. *See* Dkt. 116 at 13–14; *see also*

9 RCW 7.72.030(1)(a); *Ruiz-Guzman v. Amvac Chem. Corp.*, 141 Wn.2d 493, 503–05

10 (2000). To that extent, Ethicon's motion has been mooted by the dismissal of this claim.

11 But Dr. Rosenzweig has opined that the laser cut mesh in the TVT-Exact is defective

12 because it is too stiff and rigid. *See* Dkt. 77, Ex. 1, at 18. This opinion may be relevant to

13 White's remaining claims and potentially to rebut any of Ethicon's defenses. The Court

14 thus reserves ruling on Dr. Rosenzweig's opinions regarding the cut of TVT-Exact mesh.

15    **4.      Duties Owed by Manufacturer**

16    Ethicon additionally seeks to limit Dr. Rosenzweig's testimony about duties

17 allegedly owed by a manufacturer. Dkt. 76 at 5–7. Specifically, it seeks to exclude his

18 opinion that "Ethicon's collection and reporting of adverse events and complications to

19 physicians and patients was incomplete, inaccurate[,] and misleading." *Id.* at 6 (quoting

20 Dkt. 77, Ex. 1, at 62). Ethicon argues that Dr. Rosenzweig is not qualified to provide

21 opinions about these topics and that he has no relevant experience that would permit him

22

1   to offer expert testimony regarding the standard of care for collecting and reporting

2   adverse events. *Id.* at 5–7.

3        White argues that Dr. Rosenzweig is qualified "to discuss the impact on surgeons

4   when a company fails to communicate risk information it has gleaned from adverse event

5   reports" and "to opine on testing that was or was not conducted." Dkt. 91 at 8. But her

6   response does not identify Dr. Rosenzweig's qualifications that permit him to opine on

7   the quality of a medical device manufacturer's system for collecting adverse event

8   reports. *See Heinrich v. Ethicon, Inc.*, No. 2:20-cv-00166-APG-VCF, 2021 WL 2290996,

9   at *4 (D. Nev. June 4, 2021). White has not met her burden establishing admissibility, as

10  there is no evidence before the Court that would allow it to reach the conclusion that Dr.

11  Rosenzweig is qualified to testify on this narrow issue. Ethicon's motion on this point is

12  therefore granted.

13       Although Dr. Rosenzweig is precluded from testifying on the standard of care for

14  collecting and reporting adverse events, he will be permitted to testify as to whether

15  Ethicon communicated risk information it collected from adverse events and whether the

16  failure to communicate (or failure to provide complete communications) impacted

17  surgeons.

18      **5.**    **Material Safety Data Sheet**

19       Finally, Ethicon moves to preclude Dr. Rosenzweig from testifying about the

20  polypropylene resin Material Safety Data Sheet ("MSDS"). Dkt. 76 at 7–8. As discussed

21  in the Court's order on Ethicon's motion for summary judgment, White's theory that

22  polypropylene (the material from which TVT-Exact products are made) is not safe for

permanent human implantation is largely supported by the MSDSs released by Ethicon's polypropylene resin manufacturer, *see* Dkts. 114-7, Dkt. 114-8, and Dr. Rosenzweig's opinions derived from the MSDSs. Dkt. 116 at 4, 9. The Court considered the MSDSs from Ethicon's suppliers in ruling on Ethicon's motion for summary judgment because it was possible that the evidence was relevant. *Id.* at 9.

Dr. Rosenzweig will be permitted to testify about the MSDS. Ethicon cites to an MDL decision excluding Dr. Rosenzweig's opinions regarding a MSDS for a different medical device manufacturer. *See In re Boston Sci. Corp. Pelvic Repair Prod. Liab. Litig.*, MDL No. 2326, 2018 WL 8054292, at *3 (S.D. W. Va. May 30, 2018). The MDL court there concluded that Dr. Rosenzweig lacked the experience and knowledge necessary to opine on what testing a manufacturer should perform. *Id.* But the overwhelming majority of courts, including the MDL Court in the Ethicon litigation, has found Dr. Rosenzweig qualified to opine on the MSDS and information contained therein. *See, e.g.*, *In re Ethicon Inc. Pelvic Repair Sys. Prod. Liab. Litig.*, MDL No. 2327, 2020 WL 774234, at *4 (S.D. W. Va. Feb. 13, 2020) ("The MSDS need not expressly forbid implantation in humans for Dr. Rosenzweig to use its statements about strong oxidizers—which he explains are readily found in the vagina—to support his concerns about mesh use in the vagina."); *Humleker*, 2020 WL 6870852, at *11 ("Dr. Rosenzweig, an experienced urogynecologist, need not be an expert in biocompatibility testing or industry standards in order to use statements in the MSDS to support his concerns about mesh use in the vagina.").

White is not seeking to introduce Dr. Rosenzweig's opinion on the MSDS to establish what testing Ethicon should have done. Rather, he uses the MSDS to derive his opinion about the use of mesh in the vagina and oxidization. *See* Dkt. 77, Ex. 1, at 19–20. The Court agrees with the MDL Court that Dr. Rosenzweig may use the MSDS in support of his opinions. Ethicon's motion is therefore denied as to this issue.

**B.    Dr. Paul Michaels**

Dr. Michaels is a pathologist designated by White to offer general opinions about the TVT-Exact device implanted in White for the treatment of her SUI. *See* Dkt. 79, Ex. A, Expert Report of Paul J. Michaels, M.D. Ethicon seeks to limit Dr. Michaels' opinions regarding alternative designs, arguing that his alternative-designs opinions are unsupported by testing or scientific literature. Dkt. 78. Ethicon asserts that Dr. Michaels has no reliable basis to testify that his proposed alternatives are actually safer than (and at least as effective as) Ethicon's mesh products. *Id.*

As discussed above, White's design defect claim under the risk-utility test has been dismissed with prejudice. *See* Dkt. 116 at 13–14. To the extent that Ethicon seeks to limit Dr. Michaels' alternative-design opinions for this specific claim, its motion is moot.

But the alternative-design opinions could be relevant to White's design defect claim under the consumer expectations test or her general consumer expectations claim, in which White must establish that the TVT-Exact was more dangerous than would be contemplated by an ordinary physician-consumer. Dr. Michaels attributes smaller pore size to the alleged defects of the TVT-Exact and opines that studies have "uniformly supported the finding that larger mesh pore sizes have better incorporation into the

1    surrounding native tissues." Dkt. 79, Ex. A, at 5. It is possible that Dr. Michaels'

2    alternative-design opinions could be relevant as to whether the TVT-Exact was more

3    dangerous than contemplated or to rebut any of Ethicon's defenses, but a foundation will

4    need to be laid.

5           Ethicon argues that Dr. Michaels' opinions are unreliable because he did not test

6    them or support them with reliable testing data from other sources. Dkt. 78 at 5–6. But

7    Dr. Michaels' report includes citations to several different studies on the topic of mesh

8    pore sizes and the response of tissue to the different pore-sized mesh. *See* Dkt. 79, Ex. A,

9    at 5–6. *Daubert* does not require that the expert conduct the testing themselves; rather,

10   the evidence must rest on a reliable foundation, which can include support from peer-

11   reviewed studies. *See Daubert II*, 43 F.3d at 1316–17 (discussing *Daubert*, 509 U.S. at

12   590, 594). Dr. Michaels' opinion that lightweight, large pore meshes have lower

13   complication rates is supported by studies and appears to rest on a reliable foundation.

14   *See Geery v. Ethicon*, No. 6:20-cv-1975-RBD-LRH, 2021 WL 2580144, at *5 (M.D. Fla.

15   Apr. 9, 2021); *cf. Willet v. Johnson & Johnson*, 465 F. Supp. 3d 895, 901–02 (S.D. Iowa

16   2020) (limiting an expert's opinion on alternate designs because the expert did not "point

17   to any peer-reviewed studies, scientific or testing evidence, or any principles or

18   methodology" in support of his opinion that an alternate design would be safer).

19   Ethicon's motion is therefore denied under this theory.

20          Ethicon also seeks to limit Dr. Michaels' opinion on any non-mesh surgical

21   alternatives to the TVT-Exact. Dkt. 78 at 7–8. Indeed, the Court previously held that Dr.

22   Rosenzweig is precluded from testifying that White would not have been injured if she

had undergone a procedure that did not implant synthetic mesh, among other issues. *See* Dkt. 72 at 3–4. Ethicon's motion is therefore granted as to this narrow issue, and Dr. Michaels is precluded from opining that alternative procedures would have prevented White's harm. But whether Dr. Michaels' opinion on any non-mesh surgical alternatives is relevant to rebut Ethicon's defenses remains to be seen, and the Court reserves ruling on this issue.

**C.   Scott Guelcher, Ph.D.**

Dr. Guelcher is a biomaterials expert retained by White to provide general opinions about the defective design of the Ethicon pelvic mesh products at issue in this case. *See* Dkt. 81-1. Ethicon seeks to limit Dr. Guelcher's alternative-designs opinions and his degradation opinions. Dkt. 80.

**1.   Alternative Designs**

First, Ethicon seeks to limit Dr. Guelcher's opinions regarding alternative designs, arguing that they are irrelevant and unreliable. *Id.* at 3–5. The Court incorporates its rulings on alternative designs opinions as to Dr. Rosenzweig and Dr. Michaels here. To the extent that Ethicon seeks to limit Dr. Guelcher's alternative-design opinions for White's design defect claim under the risk-utility test, its motion is moot. But it is possible that his alternative-design opinions could be relevant as to whether the TVT-Exact was more dangerous than contemplated or to rebut any of Ethicon's defenses, but a foundation will likely need to be laid. The Court therefore reserves ruling on this first issue.

1        **2.    Degradation**

2        Next, Ethicon argues that Dr. Guelcher's degradation opinions are unreliable

3    because the testing they are based on used a flawed methodology. *Id.* at 5. Dr. Guelcher

4    co-authored a peer-reviewed paper on polypropylene degradation, *see* Dkt. 81-11

5    ("Talley paper"), and Ethicon argues that the Talley paper attempts to revive opinions

6    previously found unreliable. In 2015, the MDL Court found a different paper co-authored

7    by Dr. Guelcher unreliable in part because the authors failed to follow a written protocol

8    or use a sufficient sample size. *See Mathison v. Boston Sci. Corp.*, No. 2:13-cv-05851,

9    2015 WL 2124991, at *22–23 (S.D. W. Va. May 6, 2015). Ethicon now seeks to exclude

10    Dr. Guelcher's opinions derived from the Talley paper, arguing that it too is unreliable.

11        Ethicon devotes much of its motion discussing the Talley paper's methodology,

12    but its arguments are better suited for cross-examination. The Talley paper is peer-

13    reviewed and published in a reliable scientific journal; the work product has been vetted

14    to be "good science." *Daubert*, 509 U.S. at 593 ("[S]ubmission to the scrutiny of the

15    scientific community is a component of 'good science,' in part because it increases the

16    likelihood that substantive flaws in methodology will be detected."). Indeed, many

17    district courts have held the same. *See, e.g.*, *McBroom v. Ethicon, Inc.*, No. CV-20-

18    02127-PHX-DGC, 2021 WL 2709292, at *22 (D. Ariz. July 1, 2021) ("Defendants likely

19    have identified flaws in the Talley study, but those flaws are fodder for cross-

20    examination." (internal quotation and alteration omitted)); *Gomez v. Am. Med. Sys. Inc.*,

21    No. CV-20-00393-PHX-ROS, 2021 WL 1163087, at *13 (D. Ariz. Mar. 26, 2021) ("But

22    Drs. Guelcher and Mays seek to use [the Talley] study to support their opinion that

1  polypropylene mesh, generally, degrades *in vivo*. The details of the study go to weight,

2  not admissibility of the opinions."). Ethicon's motion is therefore denied as to this issue.

3  **D.    Dr. Michael Margolis**

4         Dr. Margolis is a urogynecologist who has been retained as a general causation

5  expert. *See* Dkt. 83, Ex. A, Rule 26 Expert Report of Michael Thomas Margolis, M.D.

6  Ethicon seeks to incorporate the MDL Court's *Daubert* rulings on Dr. Margolis[3] and to

7  preclude Dr. Margolis from offering opinions on degradation, from criticizing the

8  mechanically cut mesh, and from offering hyperbolic opinions. Dkt. 82.

9         **1.    Degradation**

10        Ethicon first moves to exclude Dr. Margolis from offering opinions on degradation

11 of mechanically-cut versus laser-cut mesh, arguing that his opinions are unreliable. Dkt.

12 82 at 4–7. Specifically, Ethicon argues that the scientific literature upon which Dr.

13 Margolis relies is unreliable and "laced with speculation." *Id.* at 6. Like Dr. Guelcher's

14 opinions on degradation, Dr. Margolis's opinions rest upon scientific papers. Ethicon's

15 concerns about these scientific papers go to the strength of the evidence, not its

16 admissibility. *See Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation

17

18        _____

          [3] White did not respond to this portion of Ethicon's motion, and the unopposed request is
19 granted. Dr. Margolis is precluded from offering the following opinions: (1) testimony about
   what the TVT's Instructions for Use should or should not include; (2) opinions regarding
20 marketing strategy or techniques; (3) testimony related to the section 510(k) process, including
   subsequent enforcement actions and discussion of the information Ethicon did or did not submit
   in its section 510(k) application; (4) opinions about Ethicon's compliance with or violation of the
21 FDA's labeling and adverse event reporting regulations; (5) state-of-mind and legal-conclusion
   testimony; and (6) testimony that is solely a conduit for corporate information. *See In re:
22 Ethicon, Inc.*, MDL No. 2327, 2016 WL 4536885, at *2–5 (S.D. W. Va. Aug. 30, 2016).

of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."). Dr. Margolis's opinions on degradation of mesh are based upon scientific articles, as well as internal and external Ethicon studies. *See* Dkt. 83, Ex. A, at 16. Dr. Margolis's opinion on this matter is reliable, though it may be attacked through cross-examination. Ethicon's motion is therefore denied as to this issue.

### 2. Cut of TVT-Exact

Ethicon additionally argues that Dr. Margolis should be precluded from offering opinions on laser-cut versus mechanically-cut mesh because his opinions are unsupported by scientific literature and "regurgitate[]" company documents. Dkt. 82 at 7–10. White clarifies in her response that Dr. Margolis's opinions are supported by data, including observations by an Ethicon engineer, and his own experience removing over 300 mesh or sling systems. Dkt. 87 at 9–10.

While Dr. Margolis may not be "a conduit for corporate information," *In re: Ethicon, Inc.*, 2016 WL 4536885, at *5, his experience with both laser-cut mesh and mechanically-cut mesh is sufficient to satisfy the threshold reliability requirements of Rule 702. *See McBroom*, 2021 WL 2709292, at *7. Dr. Margolis will be permitted to testify on the problems he attributes to Ethicon's mesh cutting process based on his own experience and data from Ethicon. Ethicon's concerns about Dr. Margolis's opinions can be addressed in cross-examination. Ethicon's motion is therefore denied as to this issue.[4]

---

[4] It appears to the Court that Dr. Margolis's testimony on degradation and the cut of the TVT-Exact may be duplicative of Dr. Guelcher and Dr. Rosenzweig, respectively. The issue of

### 3.     Hyperbole

Finally, Ethicon moves to exclude any of Dr. Margolis's testimony that is hyperbolic. Dkt. 82 at 10–11. It cites to some of Dr. Margolis's trial testimony in other MDL cases where Dr. Margolis engaged in "inflammatory" analogies. *See id.* at 10 (citing Dkt. 83, Ex. I). These arguments are better suited for a motion in limine or a timely objection in Court; it is not a proper subject for a *Daubert* motion. The Court thus reserves ruling on this issue.

## III.   ORDER

Therefore, it is hereby **ORDERED** that Defendant Ethicon's motion to exclude Dr. Rosenzweig's general opinions, Dkt. 76, is **GRANTED in part**, **DENIED in part**, and **RESERVED in part**; its motion to limit Dr. Michaels' opinions and testimony, Dkt. 78, is **GRANTED in part**, **DENIED in part**, and **RESERVED in part**; its motion to limit Dr. Guelcher's opinions and testimony, Dkt. 80, is **DENIED in part** and **RESERVED in part**; its motion to limit or exclude Dr. Margolis's testimony, Dkt. 82, is **GRANTED in part**, **DENIED in part**, and **RESERVED in part**; and its motion to exclude Dr. Elliot's general opinions, Dkt. 84, is **DENIED as moot**.

Dated this 23rd day of February, 2022.

_____
BENJAMIN H. SETTLE
United States District Judge

---

duplicative experts may be raised in motions in limine. *See* W.D. Wash. LCR 43(j) ("Except as otherwise ordered by the court, a party shall not be permitted to call more than one expert witness on any subject.").